DUBAI ISLAMIC BANK, Plaintiff,

v.

CITIBANK, N.A., Defendant.

No. 99 Civ. 1930(RMB).

United States District Court,
S.D. New York.

March 18, 2003.

John K. Crossman, Frank Welzer, Terence Watson, Dreier, LLP, New York City, for plaintiff.

Denis McInerney, Greg Ballard, Eric Halper, Davis, Polk, & Wardwell, LLP, New York City, for defendant.

## ***ORDER***

BERMAN, District Judge.

### I. Background

In this action, filed in March 1999, Plaintiff Dubai Islamic Bank ("DIB") alleges generally that between 1995 and 1998, Defendant Citibank, N.A. ("Citibank"), principally but not exclusively through the actions of three employees Mona Searles, Pia Hurst and Brigitte Christensen, assisted in the alleged money-laundering activities of a man named Foutanga Dit Babani Sissoko, who became a customer of Citibank by walking in "off the street." Because the Court assumes familiarity with the facts, this Order will not recite them. See the Court's Dec. 29, 2000 Order, reported at 126 F.Supp.2d 659.

In the Dec. 29, 2000 Order, the Court dismissed DIB's claims for negligence per se, strict liability for facilitating financial terrorism and RICO under 18 U.S.C. §§ 1962(b) and (c). On Mar. 8, 2002, the Court denied without prejudice DIB's first motion to amend the complaint to add (1) a cause of action for participating in breach of fiduciary duty because "the amended pleading was not helpful or adequate to apprise/notify Defendant of Plaintiff's claims," (Mar. 8, 2002 Order, at 4) and (2) a demand for punitive damages because a plaintiff must do a "clearer, less conclusory, job of pleading, given the seriousness of [the] allegations." (*Id.* at 8.)

Before the Court now is DIB's second motion to amend the complaint, filed on Apr. 8, 2002. In its Proposed Amended Complaint ("PAC"), DIB seeks to add two new claims for RICO under §§ 1962(c) and (d) (PAC claims 10 and 11) and claims for participation in breach of fiduciary duty

(PAC claim 12), fraudulent concealment (PAC claim 13), aiding and abetting fraud (PAC claim 14), negligent misrepresentation (PAC claim 15), commercial bad faith (PAC claim 16) and restitution (PAC claim 17). DIB also seeks, again, punitive damages for the claims for participation in breach of fiduciary duty, fraudulent concealment, aiding and abetting fraud and commercial bad faith.

In its brief in support of the motion to amend ("Br. in Supp."), DIB argues that the Court should grant the motion because, among other reasons, "DIB should be afforded an opportunity to test the claims on the merits." (Br. in Supp. at 1), and the "proposed amendments add new legal theories for recovery and clarify the relief sought by DIB." (*Id.* at 6.) Citibank counters that none of the new claims should be permitted because they are all "futile." **For the reasons** stated below, **Plaintiff's motion is granted in part and denied in part.**[1]

## II. Standard of Review

■ Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001)(citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). A court measures futility under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Nettis v. Levitt,* 241 F.3d 186, 194 & n. 4 (2d Cir. 2001). A Rule 12(b)(6) motion may be granted only if it appears that the plaintiff can prove no set of facts that would entitle

him to relief, while making all reasonable inferences in plaintiff's favor and taking the allegations plead in the complaint as true. *Id.* Nevertheless. " '[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).' " *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (citation omitted).

■ Under Rule 9(b), certain claims must (also) be plead with particularity, e.g., a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made and (4) explain why the statements were fraudulent. *Ryan v. Hunton & Williams,* 99–CV–5938, 2000 WL 1375265, at *7 (E.D.N.Y. Sept.20, 2000).

## III. Analysis

The Court has reviewed DIB's Memorandum of Law in Support of Motion for Leave to File Amended Complaint, dated Apr. 8, 2002 and the PAC; Citibank's Memorandum of Law in Opposition to Plaintiff's Apr. 8, 2002 Motion for Leave to File Amended Complaint, dated May 22, 2002; and DIB's Reply Memorandum of Law in Support of Motion for Leave to File an Amended Complaint, dated June 6, 2002. The Court heard helpful oral argument from both parties on March 17, 2002.

Among other things, the PAC adds references to employees at Citibank other than Mona Searles, Pia Hurst and Brigitte Christensen. For example, DIB alleges that

> "Citibank officers, including Greg Duswalt and Ken Strutin, willfully ignored and failed to respond to repeated requests by compliance officer Donna

---

**1.** The Court is in no sense ruling on the ultimate merits of the parties' claims.

Barnes for know your customer information justifying the Sissoko transactions." (PAC ¶ 65);

"In August 1997, officer Grace Bornus documented Citibank's knowledge about the illicit activity in another (the fourth) SAR filed about the illicit Sissoko activity." (PAC ¶ 71).

Although some of these allegations (and others in the PAC) may help to bolster DIB's negligence and/or breach of contract claims, other allegations concerning allegedly culpable individuals fall short of specifically alleging participation in the underlying alleged racketeering scheme, which several of the claims DIB seeks to add back here require. Some of the allegations simply make conclusions without more. The Court is not required to accept "conclusions of law or unwarranted deductions of fact" as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994).

The allegations concerning the three employees, Mona Searles (a teller (PAC ¶ 42)), Pia Hurst, (a Citibanker (PAC ¶ 53)) and Brigitte Christensen, (referred to as "management" (PAC ¶ 48), "assistant vice president" (PAC ¶ 75) and "operations manager" (PAC ¶ 263(c))), specifically allege direct participation with Sissoko in the alleged underlying scheme.

**Claims DIB Seeks to Add**

**1. RICO Under 18 U.S.C. § 1962(c)**

■ DIB's § 1962(c) claim alleges liability for Citibank's alleged part in a money-laundering scheme. 18 U.S.C. § 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for a violation of 18 U.S.C. § 1862(c), a plaintiff must allege that the defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly invests in, maintains an interest in or participates in an enterprise the activities of which affect interstate or foreign commerce, causing injury to plaintiff. *Casio Computer Co. v. Sayo*, 98CV3772, 2000 WL 1877516, at *10 (S.D.N.Y. Oct.13, 2000). "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the 'mere assertion of a RICO claim ... has almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.1996), *aff'd*, 113 F.3d 1229, 1997 WL 259746 (2d Cir. 1997) (citations omitted).

■ Citibank argues persuasively that DIB's RICO claims are (still) futile because DIB has failed to satisfy several elements of RICO claims. If one element is lacking a court will refuse to allow a party to add a RICO claim. *See LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071, 1091 & n. 16 (S.D.N.Y.1996). Without reaching all the elements of a RICO claim, the Court finds that Plaintiff has failed to plead its RICO claim(s) sufficiently because the PAC does not adequately allege that Citibank took part in the "operation or management" of the alleged scheme or that Citibank was a "central figure." (The Court believes that other elements may be problematic too, e.g., the existence of an enterprise with Citibank and causation, but, as noted, does not reach them.)

Even if the Court assumes *arguendo* that DIB sufficiently pleads an "enterprise" as defined in the RICO statute, the PAC still fails to state a RICO claim. Under *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), an alleged RICO defendant must have had "some part in directing" the "operation or management" of the enterprise itself to be liable. This operation and management test "is a very difficult test to satisfy." *LaSalle Nat'l Bank*, 951 F.Supp. at 1090. DIB alleges that only Sissoko, who, as noted, became a customer of Citibank by walking in off the street (and soon befriended and married Citibank teller Mona Searles), "managed," the money-laundering scheme. (PAC ¶¶ 47, 121, 124.) DIB makes the conclusory allegation that Citibank participated in the alleged money laundering—when in fact it is the actions principally of Mona Searles, Pia Hurst and Brigitte Christensen and Sissoko—which allegedly are in question. (*e.g.*, PAC ¶¶ 1, 264–66.) The PAC describes several ways Citibank may have assisted in participating, without alleging anything approaching active "management or operation." (PAC ¶¶ 90–117.) DIB's allegations of the opening of accounts for Sissoko by Searles and Hurst, transferring funds for Sissoko and Searles's romantic relationship with Sissoko, (PAC ¶¶ 34, 47, 51, 54–56), do not constitute exerting control over the enterprise. *Reves*, 507 U.S. at 184, 113 S.Ct. 1163. Courts have explained:

— "That [defendant] Bank provided banking services—even with knowledge of the fraud—is not enough to state a claim under section 1962(c)." *Indus. Bank v. Baltic Fin. Corp.*, 93 Civ. 9032, 1994 WL 286162, at *3 (S.D.N.Y. July 27, 1994).

— "Providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise....

[E]ven provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise." *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449, 466–67 (S.D.N.Y. 1996) (citation omitted).

— "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *LaSalle Nat'l Bank*, 951 F.Supp. at 1090 (citation omitted).

— "A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." *Redtail Leasing, Inc. v. Belleza*, 95 Civ. 5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept.30, 1997).

Corporations may at times be held vicariously liable under § 1962(c) for the acts of their employees but only where a plaintiff alleges that the corporation was a central figure in the underlying scheme. *Laro. Inc. v. Chase Manhattan Bank, N.A.*, 866 F.Supp. 132, 139–40 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 810 (2d Cir.1995); *Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, 89 Civ. 0464, 1992 WL 276565, at *7 (S.D.N.Y. Sept.29, 1992), *aff'd*, 182 F.3d 901, 1999 WL 464987 (2d Cir.1999). In the Dec. 29, 2000 Order, the Court highlighted DIB's failure to allege in its original complaint that Citibank was a central figure. 126 F.Supp.2d at 671. The PAC similarly fails to make such an allegation. DIB alleges that Citibank participated, (PAC ¶ 286), but the PAC does not claim that Citibank was a central figure. At most, DIB alleges that a handful of relatively low-level employees principally at one branch of Citibank (with Sissoko) were responsible for the alleged scheme. (*See, e.g.*, PAC ¶¶ 43, 51–6, 60.) That is not adequate. *See Laro*, 866 F.Supp. at

140. Accordingly, Plaintiff may not amend its complaint to add this claim.

### 2. RICO Under 18 U.S.C. § 1962(d)

■ Section 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section." In this case, liability under § 1962(d) assumes that Citibank was a central figure in the underlying scheme. *See Laro*, 866 F.Supp. at 139–40 (holding that a corporation may be found vicariously liable in RICO claims only "where 'the corporation may fairly be said to be a 'central figure' (or 'aggressor') in the alleged scheme' "). DIB has failed to allege adequately that Citibank was a central figure with respect to either §§ 1962(c) or (d) and, therefore, both its §§ 1962(c) and (d) claims fail. *Id.* at 140 ("The conclusion that [Defendant bank] may not be held vicariously liable for the acts of its loan officers under 18 U.S.C. § 1962(c) applies with equal force to [Plaintiff's] allegation of conspiracy to violate RICO in violation of § 1962(d).") The case cited by Plaintiff's counsel at oral argument, *United States v. Zichettello*, 208 F.3d 72 (2d Cir.2000), is entirely consistent.

### 3. Claims That Will Require Plaintiff to Prove a Special Duty to Disclose

■ Claims for fraudulent concealment and negligent misrepresentation include similar elements. *See Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n*, 192 F.3d 250, 258 (2d Cir.1999)(fraudulent concealment); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir.2000)(negligent misrepresentation). Both claims presuppose the existence of a duty to disclose information. While the Court recognizes that this type of duty "ordinarily arises only in the context of business negotiations where parties are entering a contract," *Ray Larsen Assocs. v. Nikko America, Inc.*, 89 Civ. 2809, 1996 WL 442799, at *5 (S.D.N.Y. Aug.6, 1996), it appears that the duty may also arise where the parties are engaged in a business transaction as well. *See Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F.Supp.2d 335, 346 (S.D.N.Y.2001). In any case, whether a "special relationship" giving rise to a duty exists is generally a question of fact. *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103–04 (2d Cir.2001)(citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)).

DIB claims it had a "special relationship" with Citibank, beyond the normal banking relationship, based on the allegedly special terms DIB had with Citibank, including banking under Muslim Sharia principles and DIB and Citibank's long-term relationship, which presumably created a duty to disclose. (PAC ¶¶ 10–19, 143, 304–05, 323–26.) It is alleged that Citibank intentionally or negligently concealed or misrepresented transactions in certain correspondent bank accounts of DIB by sending bank statements and correspondence that did not reflect any of the illegal or suspicious activity. (PAC ¶¶ 1, 66, 148, 305, 311, 323–26.) DIB claims it suffered damages of more than $151,000,000.00 because it relied on Citibank's statements. (PAC ¶¶ 310, 312, 327.) DIB alleges each element of these claims in its PAC, thus satisfying both the Rule 12(b)(6) and, where necessary, the Rule 9(b) standards.

Without addressing the merits of either claim and taking as true DIB's factual assertions, the Court will allow DIB to amend its complaint to add claims for fraudulent concealment and negligent misrepresentation.

### 4. Claims That Will Require Plaintiff to Prove Knowledge and Participation

DIB also seeks to add claims for participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith. DIB alleges the claims for aiding and abetting fraud and commercial bad faith for the first time in the PAC—it has alleged participation in breach of fiduciary duty before.

In the Mar. 8, 2002 Order, the Court refused DIB's first attempt to amend its complaint to add a claim for participation in breach of fiduciary duty. In its first attempt, DIB's twelve paragraph participation in breach of fiduciary duty claim for relief included only a general allegation that DIB officers owed a fiduciary duty and general allegations that Citibank participated in the breach. The Court denied the motion to amend, explaining that the allegations failed to apprise Citibank who breached the duty and how and when it was breached, (Mar 8, 2002 Order, at 6–7), and reasoning that "[a]t this relatively advanced stage of the proceedings, Plaintiff can be expected readily to be able to put Defendant on clearer notice of the elements of its claim." (*Id.* at 4.) In contrast, the PAC goes further and alleges, among other things, that between Aug. 1995 and Mar. 1998, two DIB employees, Ayyoub and El Refaie, owed and breached their fiduciary duties to DIB by participating in the alleged money-laundering scheme. (PAC ¶¶ 1, 123(b), 286–88.) The PAC alleges (somewhat ambiguously) that "Citibankers, including Ms. Searles and Ms. Hurst, knew that DIB's officers or employees (Ayyoub and El Refaie), were breaching their fiduciary duties to DIB when they enabled and covered up the transfers at DIB," (PAC ¶ 292), and that "Citibankers, including Ms. Searles, Ms. Hurst and Ms. Christensen, knew that the transfer requests caused to be made by Sissoko, Ayyoub and others under their direction, were for transfers to be made to accounts that were under watch for suspicious activity." (PAC ¶ 294.)

Common to the claims for participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith are the requirements that Citibank had knowledge of and participated in the underlying scheme. *See S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847–48 (2d Cir.1987)(participation in breach of fiduciary duty); *AIA Holdings, S.A. v. Lehman Bros., Inc.,* 97 CIV. 4978, 2002 WL 88226, at *12 (S.D.N.Y. Jan.23, 2002)(aiding and abetting fraud); *Renner v. Chase Manhattan Bank,* 98 CIV. 926, 2000 WL 781081, at *17 (S.D.N.Y. June 16, 2000)(commercial bad faith).

*Knowledge*

Some disagreement exists as to whether these claims require actual or constructive knowledge. *Compare AIA Holdings,* 2002 WL 88226, at *12, *with Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 283 (2d Cir.1992). DIB alleges both in the PAC.

Allegations that Citibank only *suspected* fraudulent activity would not satisfy the actual knowledge requirement. *See Ryan v. Hunton & Williams,* 99–CV–5938, 2000 WL 1375265, at *9 (E.D.N.Y. Sept.20, 2000). The PAC bases the three claims (participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith) again principally on the conduct of Citibank employees Hurst, Searles and Christensen. (*See* PAC ¶¶ 289–94, 329–31.) DIB alleges that these Citibank employees, in the course of their employment, assisted an alleged money-laundering scheme and that they knew that DIB employees Ayyoub and El Refaie also participated. (PAC ¶¶ 291–92.) Under the laws of agency, Citibank (potentially) may be

held liable for the acts of its employees. *Renner*, 2000 WL 781081, at *11–*12. "[T]he general rule is that a bank is liable for the fraudulent acts or representations of an officer or employee acting within the course and apparent scope of his employment or authority." *Id.* (quoting 9 N.Y. Jur.2d Banks and Financial Institutions § 165 (1999)). For example, DIB alleges that

> "While acting within the scope of their employment, Citibankers including Ms. Searles and Ms. Hurst altered checks at the request of the fraudsters and in furtherance of the scheme." (PAC ¶ 90(a));

> "While acting in the scope of their employment, Citibankers like Ms. Christensen provided reference letters for Mr. Comminges [an alleged associate of Sissoko] on Citibank letterhead after Mr. Comminges' account had been closed under suspicion." (PAC ¶ 90(o));

> "After Citibank closed the accounts of Sissoko and his confederates Searles, Comminges and Cheick Sissoko, Citibank facilitated and assisted Sissoko in continuing to move money stolen from DIB's correspondent account to accounts controlled by Sissoko in Switzerland and in Florida" (PAC ¶ 329(c)); and

> "Citibank, through its officers and employees, including Mona Searles, Pia Hurst, and Brigitte Christensen, actually knew of and participated in the unlawful scheme to steal from DIB and launder the money stolen from DIB." (PAC ¶ 330.)

The PAC sufficiently alleges that Citibank had actual knowledge. *See Wight v. Bankamerica Corp.*, 219 F.3d 79, 92 (2d Cir. 2000). Because DIB's PAC satisfies the actual knowledge requirement, the Court will not address constructive knowledge.

*Participation*

Each of the claims (i.e., participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith) is subject to the requirements of Rule 9(b). *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 97 CIV. 4978, 1998 WL 159059, at *8 (S.D.N.Y. Apr.1, 1998)(participation in a breach of fiduciary duty); *Renner*, 2000 WL 781081, at *5 (aiding and abetting fraud); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 98 Civ. 4960, 1999 WL 558141, at *7 (S.D.N.Y. July 30, 1999)(commercial bad faith). Although each claim differs slightly, proof of "substantial assistance" will satisfy each of the participation requirements. *See Wight*, 219 F.3d at 91; *AIA Holdings*, 2002 WL 88226, at *12. Substantial assistance requires a defendant's participation to be the proximate cause of plaintiff's injury. *AIA Holdings*, 2002 WL 88226, at *12.

"The mere fact that participants in a fraudulent scheme 'use accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.'" *Nigerian Nat'l Petroleum*, 1999 WL 558141, at *6–*8. "The affirmative acts of opening accounts, approving various transfers, and then closing accounts on the basis of suspected fraud, without more, do not constitute substantial assistance.... [A] defendant, [however,] may provide substantial assistance by failing to act [ ] when it was required to act. Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abetter liability." *Ryan*, 2000 WL 1375265, at *9–*10. As stated previously, DIB has in the PAC alleged additional facts about the possibility of a special relationship to allow some of these other claims to survive a

motion to dismiss. Consequently, the participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith claims may be added to the DIB complaint.

### 5. Restitution

 DIB seeks to add a claim for the equitable remedy of restitution. It is unclear whether the relief sought in this count (PAC claim 17) already is covered under the claim for unjust enrichment or in the other claims. Generally "restitution is the remedy for unjust enrichment, not a separate basis for liability." *New York v. SCA Servs., Inc.,* 761 F.Supp. 14, 15 (S.D.N.Y.1991). But there are instances where a separate claim for restitution has been allowed. *See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 663 (2d Cir.1996). The Court will allow the additional claim for restitution.

### 6. Punitive Damages

 DIB seeks punitive damages for Citibank's alleged participation in breach of fiduciary duty, fraudulent concealment, aiding and abetting fraud and commercial bad faith. In each claim, DIB states: "As a result of Citibank's gross, wanton or willful fraud, dishonesty or malicious wrongdoing, DIB is entitled to recover punitive damages against Citibank." (PAC ¶¶ 302, 313, 321 & 333.) The PAC also contains a section entitled "Citibank's Gross and Immoral Misbehavior," setting forth specific acts that warrant punitive damages. (PAC ¶¶ 153–63.)

 As stated in the Court's Mar. 8, 2002 Order: "Under New York law, punitive damages 'are intended as punishment for gross misbehavior for the good of the public and have been referred to as a sort of hybrid between a display of ethical indignation and the imposition of a crimi-

nal fine.' " (Mar. 8, 2002 Order, at 8 (quoting *Home Ins. Co. v. American Home Prods. Corp.,* 75 N.Y.2d 196, 203, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990) (citation omitted)).) A court may allow a party to seek punitive damages where a "breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations' " *and* the "conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994). DIB relies only on conclusory and still unsupported, sweeping allegations of Citibank's alleged misconduct to state its demand for punitive damages. *Accord Excel Elecs. & Photo Corp. v. Aetna Casualty & Surety Co.,* 90 Civ. 6508, 1991 WL 259257, at *7 (S.D.N.Y. Nov.27, 1991). For example, the PAC states "Citibank was reportedly denounced for handling some of the billions looted from the Nigerian Treasury" (PAC ¶ 159), and "Citibank reportedly has been scrutinized by the U.S. Government for other bank clients allegedly involved in illegal activities." (PAC ¶ 160.) As such, DIB's PAC does not sufficiently plead that the conduct was a part of a pattern of similar conduct directed at the public generally. DIB may not amend the complaint to seek punitive damages, but DIB may revisit this issue depending upon the proof adduced, before the jury in this case is charged. *See* Fed.R.Civ.P. 15(b); *see also Grand Light & Supply Co. v. Honeywell Inc.,* 771 F.2d 672, 680 (2d Cir. 1985).

### IV. Conclusion and Order

For the reasons stated, the Court grants Plaintiff's motion to amend its complaint to add claims 12 through 17, denies Plaintiff's motion to amend its complaint to add

claims 10 and 11 and denies Plaintiff's motion to seek punitive damages for claims 12 through 14 and 16.