241 F.3d 186 (2nd Cir. 2001)
 JULES NETTIS, Plaintiff-Appellant,
v.
MORTIMER LEVITT; KATHLEEN H. RAWDON; CUSTOM SHOP, INC.; THE CUSTOM SHOP 5TH AVENUE CORPORATION; CUSTOM SHOP 115 CORPORATION; CUSTOM SHOP TEXAS CORP.; CUSTOM SHOP KANSAS CITY CORPORATION; MARCO ISLAND DEVELOPMENT CORP.; FURAL REALITIES CORPORATION; MORTIMER LEVITT FOUNDATION, INC.; JOHN DOE and JANE DOE, Defendants-Appellees.
 Docket No. 99-9391
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: January 11, 2001
Decided: February 22, 2001
 
 Appeal from orders of the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) dismissing plaintiff-appellant's claims under New Jersey's Conscientious Employee Protection Act.and denying leave to make certain amendments to the complaint.
 AFFIRMED in part, and VACATED and REMANDED in part.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 STANLEY N. FUTTERMAN, New York, NY, for Plaintiff-Appellant.
 ELLEN AUGUST, Goetz Fitzpatrick Most & Bruckman, LLP, New York, NY, for Defendants-Appellees.
 Before: VAN GRAAFEILAND, WINTER, and CALABRESI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Jules Nettis appeals from several aspects of the judgment entered by the United States District Court for the Southern District of New York (Jones, Judge) in the exercise of its diversity jurisdiction. He objects principally to the district court's ruling that (a) New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. 34:19-3, "does not protect employees who report fellow employees' wrongdoing directed at their private employer" and, accordingly, that (b) plaintiff's Amended and Supplemental Complaint (the "amended complaint") failed to state a claim under CEPA. Also appealed are the district court's refusals to allow Nettis to amend his complaint to add a new CEPA theory, to add a common-law claim of unjust discharge, or to add as additional defendants certain successors to his former employer's business. We reverse the district court's ruling as to the scope of CEPA liability, vacate its decision not to permit joinder of additional defendants, and otherwise affirm.
 
 Background
 
 2
 Beginning in 1968, New Jersey citizen Jules Nettis worked in New Jersey for defendant Mortimer Levitt and his network of businesses, none of which are citizens of New Jersey. By 1978, Nettis had become Controller for one of those enterprises, Custom Shop Shirtmakers ("The Custom Shop"), and occupied positions of high financial responsibility for Levitt and his various pursuits. Among his responsibilities was to notify Levitt of any financial irregularities occurring in the business. According to the allegations in Nettis' amended complaint, which we take as true for these purposes, Nettis' employment situation was stable until the early 1990's, when The Custom Shop rapidly went through a series of presidents until Levitt, who was by then 86 years old, assumed that post himself. Operational control of the organization then passed to defendant Kathleen H. Rawdon, who assumed the post of Executive Vice President in mid-1994.
 
 
 3
 In a series of clashes running from October 1994 through August 1995, Nettis repeatedly warned Rawdon about financial irregularities in the The Custom Shop's Western Region. The problems centered on the practices of the region's Vice-President, Mike Borden, and one of his managers, Robyn Wildman, whom Borden had promoted despite Nettis' warnings that the store for which Wildman was responsible showed signs of mismanagement. Nettis' objections included concerns about (a) Borden's charges for hotel rooms and for meals he shared with Wildman, (b) payroll padding, and (c) unaccounted-for shortfalls in cash and inventory. His inquiries about these matters went unanswered, and in one case Rawdon intercepted a memorandum by Nettis before a copy could reach Levitt. By the summer of 1995, Nettis had reached the conclusion, which he reported to Rawdon, that at least one manager was stealing from the company. Faced with inaction by Rawdon and Borden, Nettis took his concerns directly to Levitt in a letter that documented his belief that the company was riddled with abuse, fraud, and theft.
 
 
 4
 Levitt provided a copy of the letter to Rawdon who, plaintiff alleges, then persuaded Levitt to fire Nettis. In early November, Levitt informed Nettis that he was being terminated and gave him a choice between two severance packages, each of which would have required Nettis to waive any causes of action arising out of his discharge. Nettis rejected the offers and brought this suit in federal court.
 
 
 5
 Nettis' amended complaint alleges two causes of action. First, based on the above-described events, it claimed that defendants - Rawdon, Levitt, and Levitt's businesses - violated CEPA, which forbids retaliation based on an employee's disclosure of or objection to co-worker or employer conduct that is fraudulent, illegal, or "incompatible with a clear mandate of public policy." N.J. Stat. Ann. § 34:19-3[1]; see also Higgins v. Pascack Valley Hosp., 730 A.2d 327, 329 (N.J. 1999) (holding that "CEPA protects an employee who, with a reasonable basis, complains to his or her employer about the misconduct of co-employees, even in the absence of employer complicity in the misconduct"). Second, the amended complaint alleged that defendants failed to pay Nettis for a substantial amount of unused vacation time that he had accumulated in the course of his long tenure.
 
 
 6
 Defendants moved to dismiss the CEPA claim, and the district court granted the motion in March 1997. The court concluded that the amended complaint failed to state a claim under CEPA because (1) Nettis' reports concerned the actions of co-workers, not his employer, and (2) the fraud and mismanagement at issue harmed only his employer's interests, not the public's. Nettis then sought to amend his complaint to allege a CEPA claim based on allegations that Levitt had directed him, over his protest, to implement a policy of not collecting sales tax from customers. The district court first denied the request on the basis that the public interest was still not sufficiently implicated to state a CEPA claim, and then, after plaintiff attempted to modify the allegations to cure this deficiency, denied it again because such a claim would not relate back to the initial CEPA claim and was therefore time-barred under the applicable statute of limitations. The court did, however, accept a Second Amended and Supplemental Complaint ("second amended complaint") that contained relatively minor changes to the vacation pay claim. Nettis next sought to reallege his failed CEPA claims under the rubric of a New Jersey common law tort action for wrongful discharge. The district court rejected this proposed amendment as inconsistent with CEPA's provision that an action under the statute "shall be deemed a waiver of the rights and remedies available under... the common law." N.J. Stat. Ann. § 34:19-8.
 
 
 7
 The last dispute of relevance here concerned Nettis' attempt to add as a defendant Huntington Clothiers, Inc.,[2] which acquired virtually all of The Custom Shop's assets and continued its business by virtue of a September 1997 transaction. According to the Asset Purchase Agreement ("APA"), an intermediary would acquire all of The Custom Shop's real property, its tangible personal property, its inventory, its regulatory permits, its intellectual property (including the right to the name "The Custom Shop"), its contract rights, its accounts receivable, and its business records, among other things. Few assets of note were excluded. The purchaser also assumed The Custom Shop's lease and contract obligations and its accounts payable, but the APA purported to exclude all other liabilities. In a letter to his employees, Levitt explained that "The Custom Shop will be merged with Huntington Clothiers and Shirtmakers," and that "[o]ur stores will continue to operate under the name of The Custom Shop Shirtmakers/Tailors," with Rawdon becoming President and chief operating officer. The district court refused to allow Nettis to add the new defendants, concluding that plaintiff had failed to provide any basis to believe that the transaction was anything but a purchase of assets, and not a de facto merger.
 
 
 8
 The vacation pay claim then went to a jury trial in which plaintiff was awarded $20,192.50 against Levitt. The district court entered judgment, and plaintiff timely appealed the dismissal of his CEPA claim and the denial of his various attempts to amend his complaint. There is no cross-appeal.
 
 Discussion
 I. The CEPA Dismissal
 
 9
 We review de novo the district court's decision to dismiss for failure to state a claim upon which relief can be granted. Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). Such a motion to dismiss may be granted only if, taking as true the allegations pleaded in the complaint and making all reasonable inferences in favor of the plaintiff, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir.1999) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))).
 
 
 10
 Neither ground put forward by the district court supports dismissal of appellant's CEPA claim. First, the New Jersey Supreme Court has now firmly established that CEPA permits claims for retaliation based on an employee's objections to co-workers' illegal or fraudulent conduct, even if his employer is not complicit in that conduct. Higgins, 730 A.2d at 329, 334-38; accord DeLisa v. County of Bergen, 755 A.2d 578, 581-82 (N.J. 2000). Second, New Jersey's highest court has also recently held that, when an employee claims retaliation for objecting to illegal or fraudulent practices, the employee need make no separate showing that "the complained-about activities implicate the public interest." Estate of Roach v. TRW, Inc., 754 A.2d 544, 549 (N.J. 2000).
 
 
 11
 In Roach, the New Jersey court confronted a case in which the plaintiff alleged retaliation for his reports that a co-worker had filed false expense reports and time cards, had misused company property for personal use, and had attempted to secure kickbacks. This was conduct which, the Roach court stated, could reasonably have been deemed to be, at least in part, illegal. Id. at 552. Reasoning that the statute's plain language renders objections to fraud and illegality sufficient to trigger CEPA protection, and that "all laws and regulations are imbued with the public interest," id. at 550, the court reversed a lower court's decision that "CEPA did not extend protection to employees' complaints about co-employees' actions that harmed only the employer." Id. at 549. The conduct that Nettis claims led to his discharge is indistinguishable from that at issue in Roach, and the reasons given by the district court, and urged upon us by appellees, for excluding this conduct from CEPA protection are the same as those rejected by the New Jersey Supreme Court in that opinion.
 
 
 12
 We note that the district court ruled on these questions considerably before Higgins and Roach were decided and at a time when there was well-reasoned authority supporting the conclusion reached below. See Littman v. Firestone Tire & Rubber Co., 715 F. Supp. 90, 93 (S.D.N.Y. 1989) (holding that "fraud directed solely at the company with the shareholding public only indirectly affected... is not the type of activity [CEPA] was designed to combat, or whose disclosure the statute was designed to protect"). Nonetheless, with the benefit of subsequent New Jersey Supreme Court rulings on these issues, it is plain that the amended complaint alleged facts that, if proven, would support a finding of liability under CEPA.
 
 
 13
 Appellees' attempts to distinguish Roach on the ground that the employer in that case was a federal defense contractor, and that as a result fraud against it necessarily implicated the public interest, are unavailing. The Roach opinion nowhere relies on this consideration. Instead, its reasoning makes clear that the very fact that violations of law are at issue sufficiently implicates the public interest without more. See Roach, 754 A.2d at 550.
 
 
 14
 In this respect, Nettis' claims of an ongoing pattern of deceptive financial reporting and of shortfalls in cash and inventory, as well as the charge in his letter to Levitt that employees were "stealing," make clear that Nettis claimed to be reporting conduct that he believed, at least in part, to have violated laws against fraud and theft. Whether Nettis' claims that laws were broken were objectively reasonable cannot be determined on a motion to dismiss. The complaint is therefore sufficient to avoid dismissal under the New Jersey Supreme Court's interpretation of CEPA and our standards for evaluating the pleadings on a Rule 12(b)(6) motion.
 
 
 15
 Accordingly, we reverse the district court's grant of defendants' motion to dismiss plaintiff's CEPA claim and remand to allow that claim to proceed, as it was asserted in the amended complaint.
 
 II. The Proposed Amendments
 
 16
 We review only for abuse of discretion a district court's decision to permit or deny leave to amend a complaint, "keeping in mind that leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)).
 
 A. The Sales Tax CEPA Claim
 
 17
 The district court gave two independent grounds for disallowing the proposed amendment concerning Nettis' objections to Levitt's discontinuation of sales tax collection. We have already rejected its first reason - that CEPA does not bar retaliation for objecting to illegal conduct that harms only the employer. But the second reason, that such a claim is time-barred, remains, and provides a sufficient basis to justify the district court's denial of both of Nettis' motions to add a CEPA sales tax claim.
 
 
 18
 The parties agree that the proposed amendment was timely only if it related back to the original complaint. The district court ruled that it did not relate back. Under both New Jersey law, which is incorporated by Federal Rule of Civil Procedure 15(c)(1), and the federal standard enunciated by Rule 15(c)(2), a proposed claim relates back if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," Fed. R. Civ. P. 15(c)(2); accord Brown v. Kennedy Mem'l Hosp. Univ. Med. Ctr., 711 A.2d 1370, 1375 (N.J. Super. Ct. App. Div. 1998). We review for abuse of discretion a district court's decision as to whether this standard has been met. Wilson v. Fairchild Republic Co., 143 F.3d 733, 739 n.6 (2d Cir. 1998).
 
 
 19
 We see no such abuse in the district court's determination that plaintiff's allegations of retaliation based on his objections to Levitt's sales tax directives failed to relate back to his allegations in the amended complaint. It is true that both sets of claims concern the same ultimate event: Levitt's decision to fire Nettis. Nonetheless, the proposed amendment alleged retaliation based on an entirely distinct set of protected employee activity. Nettis' objections concerning sales tax collection were completely different from those concerning the irregularities in the Western Division. And the sales tax matter was a dispute between Nettis and Levitt, whereas the allegations originally made involved a conflict between Nettis and Rawdon, Borden, and Wildman. The district court acted within its discretion in concluding that these distinctions were sufficiently important so that the original amended complaint did not provide "fair notice" of the subsequent sales tax collection claims. Id. at 739.
 
 B. The Common-Law Claim
 
 20
 The district court ruled that Nettis could not amend his complaint to add a common-law claim because bringing a CEPA claim waives analogous common-law actions. Appellant contends that there was no waiver because, under the district court's prior ruling, his allegations, though labelled a CEPA claim, in fact failed to support a CEPA cause of action. Because we have found that Nettis did state a CEPA claim, the waiver of common-law claims now plainly applies.
 
 C. Joinder of the Successor Defendants
 
 21
 One appropriate basis for denying leave to amend is that the proposed amendment would be futile because it fails to state a claim. See Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). Here, the district court concluded that plaintiff's request to add Huntington Clothiers and others as defendants was futile because his allegations were insufficient to support the conclusion that Huntington could be subjected to successor liability. This conclusion was, however, premised on an erroneous view of the relevant law.
 
 
 22
 On appeal, the parties agree with the district court that New Jersey and New York law are the same for these purposes.[3] In both states, when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's tort liabilities, notwithstanding the traditional rule that a purchaser of corporate assets does not assume the seller's liabilities. See generally Woodrick v. Jack J. Burke Real Estate, Inc., 703 A.2d 306 (N.J. Super. Ct. App. Div. 1997); Sweatland v. Park Corp., 587 N.Y.S.2d 54 (4th Dep't 1992).
 
 
 23
 To determine whether such a "de facto merger" or "mere continuation" of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. Woodrick, 703 A.2d at 312; Sweatland, 587 N.Y.S.2d at 56. These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, "it was the intent of [the successor] to absorb and continue the operation of [the predecessor]." Woodrick, 703 A.2d at 313-14; see also City of New York v. Charles Pfizer & Co., 688 N.Y.S.2d 23, 24 (1st Dep't 1999) (explaining that the de facto merger exception derives from "the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities in order to ensure that a source remains to pay for the victim's injuries" (internal quotation marks and citations omitted)); Sweatland, 587 N.Y.S.2d at 56.
 
 
 24
 Applying these standards to the case at hand, with the liberality due when the issue is the addition of defendants to the complaint,[4] it is plain that Nettis' efforts to add Huntington Clothiers were not futile. Construed in the light most favorable to plaintiff, the APA clearly contemplates the wholesale acquisition and continuation of The Custom Shop's business. The considerations that formed the basis for the district court's decision - that the transaction was structured as an asset purchase for cash, and that the APA expressly sought to limit the purchaser's liability - represent just the sorts of formalities that the de facto merger doctrine ignores. See Woodrick, 703 A.2d at 313 ("[A] corporate successor can no longer avoid liability by simply structuring a cash-for-assets sale."); Sweatland, 587 N.Y.S.2d at 55 (requiring further discovery into whether a transaction constituted a de facto merger where the successor "acquired all of [the predecessor's] fixed assets and many of its intangible assets such as good will, engineering, patents, copyrights, and customer lists, as well as its right to use the trade name"); cf. Charles Pfizer & Co., 688 N.Y.S.2d at 24 (finding no showing of a de facto merger where "[the predecessor] sold [the successor] only a small part of its business [and], continues to do business").
 
 
 25
 In light of the district court's incorrect determination that plaintiff's allegations of successor liability were futile, and given the changed circumstances of this case arising from our reinstatement of Nettis' CEPA claim, we vacate the district court's decision to deny Nettis leave to add Huntington and other defendants and remand the matter, so that the court below can reassess the propriety of such an amendment.
 
 Conclusion
 
 26
 Having considered all of the parties' arguments, we (1) REVERSE the district court's holding that plaintiff's amended complaint fails to state a CEPA claim, (2) VACATE the district court's decision to deny plaintiff leave to add additional, successor liability, defendants, and (3) AFFIRM the district court's decisions to deny plaintiff leave (a) to add a CEPA claim arising from his objections to defendants' sales tax policy and (b) to add a common-law wrongful discharge claim. The case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 NOTES:
 
 
 [1]
 The statute imposes on employers a broad duty not to retaliate against "whistle-blowers":
 An employer shall not take any retaliatory action against an employee because the employee does any of the following:
 a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care;
 b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or
 c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
 (1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
 (2) is fraudulent or criminal; or
 (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
 N.J. Stat. Ann. 34:19-3.
 
 
 [2]
 Nettis also sought to add TCS Acquisition Company, the intermediary that first acquired The Custom Shop's assets, and Drexel Shirt Company, which also played a role in the transaction.
 
 
 [3]
 There was some question below as to whether New York law might apply to the question of successor liability because defendants are all New York citizens and because the APA provides that it will be governed by New York law.
 
 
 [4]
 Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss. See Ricciuti, 941 F.2d at 123.