**RESERVE SOLUTIONS INC., Plaintiff,**

v.

**Mark VERNAGLIA, Defendant/Third–Party Plaintiff**

v.

**Bruce Bent, Bruce Bent II and Arthur Bent, Third–Party Defendants.**

No. 05 Civ. 8622(VM).

United States District Court, S.D. New York.

June 20, 2006.

Melvin Arnold Brosterman, Meredith Lee Strauss, Stroock & Stroock & Lavan LLP, New York City, for Plaintiff.

Brian David Spector, Spector & Ehrenworth, P.C., Florham Park, NJ, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Reserve Solutions, Inc. ("Reserve"), commenced this action on October 11, 2005, seeking damages for conversion and breach of fiduciary duty by the defendant, Mark Vernaglia ("Vernaglia"), a New Jersey resident. Vernaglia is a former officer and director, and current shareholder, of Reserve, a closely held Delaware financial services corporation with offices in Manhattan. Vernaglia has filed counterclaims against Reserve and a third-party complaint against Bruce Bent ("Bent"), Bruce Bent II ("Bent II") and Arthur Bent (together, the "Bents"), who are directors, officers and shareholders of Reserve, alleging breach of contract, breach of an implied covenant of good faith and fair dealing, wrongful termination, fraud, inspection of books and records pursuant to Delaware statute, defamation, and oppression of a minority shareholder.

Reserve and the Bents now move to dismiss these counterclaims and the claims contained in the third-party complaint on the grounds that they fail to state a claim upon which relief may be granted, fail to plead fraud with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), and, with respect to the claim for inspection of books and records, lack of subject matter jurisdiction. In turn, Vernaglia moves for leave to file a Second Amended Answer, Affirmative Defenses, Counterclaim and Third Party Complaint (the "Second Amended Answer"). Vernaglia has withdrawn the causes of action for breach of contract, breach of an implied covenant of good faith and fair dealing, and wrongful termination based on violation of public policy. His Second Amended Answer adds a cause of action for conversion to the remaining claims noted above. For the reasons discussed below, the motion of Reserve and the Bents to dismiss the Second Amended Answer herein is GRANTED in part and DENIED in part, and Vernaglia's motion for leave to amend is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. FACTS

In ruling upon a motion to dismiss, the Court must accept all well-pleaded facts as alleged by the non-movant as true. Accordingly, the factual recitation that follows is derived from Vernaglia's version of events.

In or about June 2001, Vernaglia, Bent, and Bent II met and agreed to form Reserve. They agreed that Vernaglia would develop new financial programs for Reserve, create patents for the programs, and manage the business with Bent II. Bent and Bent II proposed that in exchange for Vernaglia's efforts and an assignment of Vernaglia's intellectual property rights in the financial programs to Reserve, Vernaglia would be made a director and officer of Reserve and would be granted a 45 percent equity interest in Reserve.

In that same month, Vernaglia became the president and a member of the board of directors of Reserve. In this capacity, and in reliance on Bent's and Bent II's representations, Vernaglia developed intellectual property in the form of financial programs to be used by Reserve. In or before June 2003, Reserve submitted three

patent applications for these programs, listing Vernaglia as an inventor. Vernaglia devoted substantial efforts to preparing the patent applications and was instrumental in submitting the applications and supporting documents for approval. The last necessary step of Vernaglia's involvement in the patent application process took place on or about October 4, 2004, when Vernaglia signed and dated a revised patent declaration to be filed by Reserve's outside counsel.

On or about October 18, 2004, Bent II asked Vernaglia to make a working capital contribution to Reserve of $132,000 to show his commitment to Reserve's long-term success. Vernaglia obliged. At the same time, Bent and Bent II represented that they would make capital contributions totaling $3 million. They never actually made these contributions, but recorded their alleged contribution in Reserve's accounts as a loan from shareholders. These contributions would have reduced Vernaglia's equity interest from 45 percent to 13.2 percent.

Thereafter, Reserve began transferring the administration of its books and records to a new, related company, Reserve Funds, Inc., which was administratively controlled by Arthur Bent. Reserve and the Bents directed the Bents' personal accountant to close Reserve's books.

Based on these occurrences, Vernaglia began investigating waste and mismanagement at Reserve in the form of improper reporting and documentation of investments and expenses, improper accounting, improper movement of funds between accounts, failure to complete required forms, and claims regarding $20 million in missing funds.

On Friday April 1, 2005, Bent II called Vernaglia, who was on his way back to the office from a meeting, and told him not to come back to work. On Monday April 4, 2005, Reserve published an announcement stating that it had hired two new sales executives. Vernaglia was formally terminated as president of Reserve on August 30, 2005 and was terminated as a director on September 29, 2005. Reserve thereafter brought suit against Vernaglia, claiming that he converted Reserve's funds for his own personal use by utilizing those funds to pay his personal credit card bills and by paying himself excess wages. Vernaglia maintains that all payments made to him were made with the knowledge, consent, and/or ratification of one or more Reserve officers and that these payments were either compensation or reimbursements for business expenses he charged to his credit card and other expenses, with the knowledge and/or approval of Bent II.

Reserve and the Bents published statements to Reserve employees and its accountant "that [Vernaglia] converted Reserve's funds for his own personal use by using those funds to pay for his personal credit card bills and to pay himself wages in excess of those authorized by Reserve's majority shareholders and Board of Directors." (Second Amended Answer 10, 18.)

## B. PROCEDURAL HISTORY

On December 19, 2005, Vernaglia filed a First Amended Answer, Affirmative Defenses, Counterclaim and Third–Party Complaint (the "First Amended Answer"). Thereafter, Reserve and the Bents as third-party defendants filed a motion to dismiss the First Amended Answer, on the grounds that it fails to state a claim upon which relief can be granted, fails to plead fraud with particularity, and that the Court lacks subject matter jurisdiction over the claim for access to corporate books and records. In response, Vernaglia opposed the motion and sought leave to file the Second Amended Answer. Re-

serve and the Bents oppose Vernaglia's motion for leave to amend.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In making this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

■■■ "A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* A district court may consider evidence outside the pleadings when resolving a challenge to the court's subject matter jurisdiction. *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir.1998).

■■■ Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely granted when justice so requires."

Fed.R.Civ.P. 15(a). However, "a district court may properly deny leave when amendment would be futile." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir.1999) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Reserve and the Bents argue solely that amendment would be futile here because the Second Amended Answer, like the First Amended Answer, would not survive a motion to dismiss as it is similarly defective. "Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir.2001). Accordingly, the Court will consider each counterclaim and third-party claim as it appears in the Second Amended Complaint, as the operative question is whether the claims as set forth in this form would survive a motion to dismiss.

### B. APPLICATION

#### 1. Fraud

■■■ Reserve and the Bents argue that Vernaglia's fraud claim, in both its current and proposed amended form, fails to plead fraud with particularity as required by Rule 9(b). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971). The Second Circuit has "construed Rule 9(b) strictly in order to minimize strike suits, to protect defendants ... from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue." *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir.1982).

■ However, the Second Circuit has also recognized "an obvious tension between the requirements of Rule 9(b) and the practicality of alleging in elaborate detail facts constituting fraud prior to discovery," *id.*, as well as a tension with Federal Rule of Civil Procedure 8 ("Rule 8"), which requires only a short and concise statement of the claims. *See Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir.1974). To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993).

■ Vernaglia contends that two statements at issue here were fraudulent. First, he avers that the statement, made by Reserve through its agents Bent and Bent II, and individually by the Bents,[1] at a meeting held at Bent II's New York City offices in June 2001, that Vernaglia would serve as an officer of Reserve and be granted a 45 percent equity stake in the Company in exchange for overseeing the development of financial programs, developing patents and assigning them to Reserve (the "June Statement"), was fraudulent. Vernaglia also alleges that Bent's and Bent II's statement on or about October 18, 2004, that they would contribute $3 million to Reserve's working capital (the "October Statement") was fraudulent. Thus the first, second and third requirements of Rule 9(b) are satisfied.

■ The fourth element, an explanation of why the statement was fraudulent, requires reference to the substantive law of fraud. Under New York law, a party must establish the following to prevail on a fraud claim: (1) a material misrepresentation; (2) knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the misrepresentation; and (5) damages as a result of the misrepresentation. *See Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir.2000) (citations omitted). As noted above, "conclusory allegations that [a party's] conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

Vernaglia alleges that the June Statement was a material misrepresentation and that its speakers knew it was false and had an intent to defraud because at the time the statement was made its speakers had no intention of allowing Vernaglia to "reap the agreed upon financial rewards." (Second Amended Answer 20.) These elements are also satisfied with respect to the October Statement, as Vernaglia alleges that at the time that statement was made the Bents had no intention of contributing the $3 million, but made the misrepresentation in order to induce Vernaglia into making a capital contribution to Reserve. He also properly alleges damages as a result of the alleged misrepresentations in the form of loss of his interest in the patents and loss of $132,000. The parties do not dispute the element of reasonable reliance, and the Court finds that it is present here.

The Court finds that the fraud allegations with respect to Reserve, Bent and Bent II meet the particularity standards of

---

1. Vernaglia claims in one section of his pleadings that this representation was made by the Bents, and in another section that this statement was made by Bent and Bent II, who were present at the June 2001 meeting. His allegation that the statement was made by all three Bents, as opposed to those of them present at the meeting, is conclusory. In contrast, his apparent allegation that the statements can be attributed to Reserve through its agents Bent and Bent II is soundly stated.

Rule 9(b). However, the allegation with respect to Arthur Bent is conclusory and lacking in factual support; thus it will be dismissed.

■ Reserve and the Bents further argue that the fraud claim in both forms fails because it is merely a breach of contract claim recast as a fraud claim, which cannot stand under New York law. Under New York law, "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *About.Com, Inc. v. Targetfirst, Inc.*, No. 01 Civ. 1665, 2002 WL 826953, at *2 (S.D.N.Y. Apr. 30, 2002) (*citing Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940, 944 (1994)). The Second Circuit has found that "a cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing." *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir.1995).

■ Here, Vernaglia initially asserted a claim for breach of contract but subsequently withdrew that claim. Moreover, to sustain a claim of fraud when the contention is that one party to a contract induced the other party to enter into the contract by way of a misrepresentation, a party "must either (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996). Here, although Vernaglia initially contended that the June statement led to a contract, he no longer so contends. Further, even if the October Statement, which led to Vernaglia's contribution of the $132,000 to Reserve and to the alleged diminution in his ownership of Reserve was part of a contract, it was also a promise made between co-fiduciaries, as Vernaglia, Bent and Bent II were shareholders in a closely held corporation. Therefore, Vernaglia states a proper claim for fraud.

### 2. Conversion

■ Reserve and the Bents argue that Vernaglia does not properly state a claim for conversion because he never made a demand to recover his property. "Conversion occurs when a [party] exercises unauthorized dominion over personal property in interference with a[nother party's] legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir.1997) (*citing Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 124 (S.D.N.Y.1996)). Demand is not always required in order to make out a claim of conversion. It is required only when the original possession is lawful. In that case, the demand serves to put the party in possession on notice that she holds the property wrongfully and the possession becomes an unlawful conversion once that party refuses the rightful owner's demand for the property. *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir.1996). Here, there is no allegation that Reserve or the Bents ever lawfully or innocently exercised dominion or control over Vernaglia's property. On the contrary, the facts as described in the Second Amended Answer indicate that the possession of Vernaglia's property was unlawful from the outset. Thus, Vernaglia properly states a claim for conversion.

### 3. Inspection of Books and Records

■ The source of Vernaglia's right to inspect Reserve's books and records is a

Delaware provision granting shareholders this right. *See* Del.Code. Ann. tit. 8, § 220. This statute vests the Delaware Court of Chancery "with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought." *Id.* Thus, Reserve and the Bents argue, this Court lacks subject matter jurisdiction to adjudicate this claim. The Court agrees.

■ Vernaglia argues that the Court may, and should, require Reserve to allow Vernaglia access to its books and records not pursuant to the Delaware statute, but pursuant to the Court's power to fashion equitable remedies. However, Vernaglia has not made a showing that equitable relief is warranted here. He argues that the Court should allow him access to books and records now because he will have such access at the discovery phase of this matter. But this argument, in fact, cuts the other way. That Vernaglia will likely have access to corporate books and records in discovery requires him to make a even more heightened showing regarding why he needs those records at this time. This he has failed to do. Furthermore, discovery is the proper context for balancing the issues of relevancy and prejudice that will determine whether and to what extent opening Reserve's books and records to Vernaglia is appropriate.

### 4. *Defamation*

Reserve and the Bents argue that Vernaglia's defamation claim fails to meet the pleading standards of New York and federal law. The Court disagrees.

■ New York law mandates that in actions for defamation, "the particular words complained of shall be set forth in the complaint." N.Y. C.P.L.R. 3016(a) (McKinney 2003). This Vernaglia has done. Vernaglia complains that Reserve and the Bents stated that he "converted

Reserve's funds for his own personal use by using those funds to pay for his personal credit card bills and to pay himself wages in excess of those authorized by Reserve's majority shareholders and Board of Directors." At this stage of the proceedings, this allegation is sufficient to fulfill the requirements of New York law.

■ The lower courts have developed a framework for the requirements of pleading defamation under Rule 8. According to this framework, in order to properly plead a claim for defamation, a party must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005) (*citing Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000); *Ives v. Guilford Mills, Inc.*, 3 F.Supp.2d 191, 199 (N.D.N.Y. 1998); *Reeves v. Cont'l Equities Corp. of Am.*, 767 F.Supp. 469, 473 (S.D.N.Y.1991)). The Court need not pass on whether this test provides the correct framework, as Vernaglia has met its requirements. The allegedly defamatory statements are set out in the Second Amended Answer. Vernaglia alleges that the Bents, and through them, Reserve, made the statements in 2005 to other Reserve employees and to Reserve's accountant. These allegations meet the requirements of Rule 8 in that they give Reserve and the Bents sufficient notice of the communications complained of and afford them an opportunity to defend themselves. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986).

■ "Under New York law, 'in the context of a legal proceeding, statements by parties and their attorneys are abso-

lutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.' " *O'Brien v. Alexander,* 898 F.Supp. 162, 171 (S.D.N.Y.1995) (*citing Grasso v. Mathew,* 164 A.D.2d 476, 564 N.Y.S.2d 576, 578 (App.Div.3d Dep't. 1991)). Reserve and the Bents further argue that the communications in question are protected by absolute privilege, as the statements were made in the course of investigating and developing claims for litigation. However, Vernaglia does not allege that the statements were made in preparation for litigation, and this question of fact cannot be resolved at this early stage of the proceedings.

### 5. *Oppression of a Minority Shareholder*

■ Delaware law applies to the cause of action for oppression of a minority shareholder because this claim concerns the internal affairs of Reserve, a Delaware corporation. *See Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger,* 423 F.3d 145, 149 n. 6 (2d Cir.2005).

Although there is little caselaw in this area, one court that squarely addressed oppression of a minority shareholder under Delaware law analyzed the facts against a two-pronged test: (1) violation of the reasonable expectations of the minority shareholder; and (2) "a visible departure from the standards of fair dealing and fair play." *Litle v. Waters,* Civ. A. No. 12155, 1992 WL 25758, at *8 (Del.Ch. Feb.11, 1992) (*citing Gimpel v. Bolstein,* 125 Misc.2d 45, 477 N.Y.S.2d 1014, 1018 (Sup. Ct. Queens County 1984)).

■ Accepting the facts as alleged by Vernaglia as true for the purposes of this motion, Vernaglia had a reasonable expectation of continued participation in the management of Reserve and in the exploitation of the patents he developed. On the same basis, the Bents had no good faith

grounds to believe that Vernaglia was converting corporate funds for his personal use. Instead, they persuaded Vernaglia to contribute the $132,000, duped him into believing that his shares had been diluted, and ousted him from the company in retaliation for his legitimate investigation into corporate waste and mismanagement and for the purpose of consolidating their control of the company, and against any interest of the corporation. Thus, if the evidence bears out Vernaglia's pleadings, the Bents' behavior departed significantly from the standards of fair dealing and fair play expected between co-fiduciaries. Vernaglia has properly stated a claim for oppression of a minority shareholder under Delaware law.

### III.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 14) of plaintiff Reserve Solutions, Inc. ("Reserve") and third-party defendants Bruce Bent ("Bent"), Bruce Bent II ("Bent II") and Arthur Bent (together, the "Bents") is GRANTED in part and DENIED in part. The motion is GRANTED with respect to the cause of action for inspection of books and records of defendant and third-party plaintiff Mark Vernaglia ("Vernaglia"), and with respect to Vernaglia's cause of action for fraud against Arthur Bent; and is DENIED with respect to Vernaglia's causes of action for fraud against Reserve, Bent and Bent II, conversion, defamation and oppression of a minority shareholder; and it is further

**ORDERED** that Vernaglia's motion for leave to amend (Docket No. 21) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Vernaglia's causes of action for fraud against Reserve, Bent and Bent II, conver-

sion, defamation and oppression of a minority shareholder, and is DENIED with respect to Vernaglia's cause of action for inspection of books and records and for fraud against Arthur Bent.

**SO ORDERED.**