**Guillermo TORRES, Plaintiff,**

v.

**DeMATTEO SALVAGE CO., INC, Joseph DeMatteo, Amalia DeMatteo, and Carmine DeMatteo, Defendants.**

**No. 14–CV–00774 (ADS)(AKT).**

United States District Court, E.D. New York.

Signed Aug. 4, 2014.

Frank & Associates, P.C. by Peter Romer, Esq., Farmingdale, NY, Andrea Tarazi, Esq., Of Counsel, Attorneys for the Plaintiff.

Costantino & Costantino, Esqs. by Steven A. Costantino, Esq., Of Counsel, Copiague, NY, Attorneys for the Defendants.

### DECISION AND ORDER

SPATT, District Judge.

On February 5, 2014, the Plaintiff Guillermo Torres (the "Plaintiff") commenced

this action pursuant to the Surface Transportation Assistance Act of 1982 (the "STAA"), as amended and recodified, 49 U.S.C. § 31105. The Plaintiff alleges that he was terminated by the Defendants, DeMatteo Salvage Co. Inc., Joseph DeMatteo, Carmine DeMatteo, and Amalia DeMatteo (collectively the "Defendants") in violation of the STAA. In particular, the Plaintiff contends that the Defendants violated the STAA by unlawfully discharging the Plaintiff for refusing to operate a truck that violated federal safety regulations.

Presently before the Court is the Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(1) under the abstention doctrine outlined in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

For the reasons set forth below, the Defendants' motion is denied.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

On June 3, 2006, DeMatteo Salvage Co. Inc. ("DeMatteo") hired the Plaintiff as a warehouse worker through the International Brotherhood of Teamsters Local 813–1034. The Plaintiff was required to work in DeMatteo's five-acre transfer station, separating recyclable materials from non-recyclable materials. The Plaintiff was also employed to operate a vehicle and transport recyclable containers to and from customers' businesses.

On November 7, 2012, the Plaintiff was terminated from his employment.

On December 17, 2012, the Plaintiff notified DeMatteo that he intended to pursue an administrative claim against DeMatteo pursuant to 49 U.S.C. § 31105(b).

On February 12, 2013, the Plaintiff filed an administrative complaint with the Department of Transportation ("DOT"), alleging that he was fired based on his refusal to operate vehicles that were unsafe or in violation of DOT regulations, codified in the 49 C.F.R. 393.9, 393.28, 393.40, 393.48, 393.75, 393.82, 393.84.

While the administrative proceeding was pending, the Plaintiff commenced an action in the New York State Supreme Court, claiming violations of New York State Labor Laws § 740(2)(a) and (c), and § 193.

The Plaintiff then notified the Department of Labor that he wished to withdraw his administrative complaint and proceed with an action in federal court.

As noted above, on February 5, 2014, the Plaintiff filed this complaint.

On April 9, 2014, the Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(1), contending that the Court lacks subject matter jurisdiction under the *Younger* abstention doctrine. In essence, the Defendants claim that the *Younger* abstention doctrine is applicable because the Plaintiff's claims can be litigated in the first-filed state action.

In their reply, the Defendants also claim that this Court lacks subject matter jurisdiction under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which allows a federal court to abstain from exercising jurisdiction, in certain "exceptional circumstances," when parallel state court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal quotation marks and citation omitted). However, the Court declines to consider the argument based on *Colorado River* as made for the first time in a reply brief.

*Playboy Enters. Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) (holding that "arguments made for the first time in a reply brief need not be considered by a court").

## II. DISCUSSION

### A. *The 12(b)(1) Standard*

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) (quoting *Reserve Solutions Inc. v. Vernaglia,* 438 F.Supp.2d 280, 286 (S.D.N.Y.2006)), *aff'd,* 273 Fed.Appx. 61 (2008); *accord Tomaino v. United States,* No. 09–CV–1578 (CBA)(LB), 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010).

"On a Rule 12(b)(1) motion, the court may consider matters outside the pleadings, including affidavits, documents, and testimony if necessary." *Tsanganea v. City Univ. of N.Y.,* No. 06 Civ. 15366(DAB)(JCF), 2008 WL 4054426, at *3 (S.D.N.Y. Aug. 28, 2008) (citing *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)), *report and recommendation adopted,* 2008 WL 4548857 (S.D.N.Y. Oct. 8, 2008).

### B. *The Younger Abstention Doctrine*

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 Wheat. 264, 19 U.S. 264, 404, 5 L.Ed. 257 (1821). *Younger* recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. 401 U.S. 37, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although *Younger* itself dealt only with a pending criminal proceeding, "*Younger* abstention has been extended to civil proceedings and state administrative proceedings, so long as the state court has a means of reviewing constitutional claims." *Cecos International, Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990) (citations omitted).

"In the paradigm situation calling for *Younger* restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." *Fernández v. Trías Monge,* 586 F.2d 848, 851 (1st Cir.1978); *see e.g., Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing judgment against him); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse). As noted by the Sixth Circuit, "*Younger* cases generally have a common procedural posture." *Devlin v. Kalm,* 594 F.3d 893, 894 (6th Cir.2010).

In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings.

*Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 30 (6th Cir.1984).

*Younger* is not based upon an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Com'n on Judicial Conduct,* 351 F.3d 65, 74 (2d Cir.2003); *see Benavidez v. Eu,* 34 F.3d 825, 829 (9th Cir.1994) ("*Younger* abstention is not jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses.") (emphasis omitted); *Schachter v. Whalen,* 581 F.2d 35, 36 n. 1 (2d Cir.1978) (per curiam) ("*Younger* abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case."). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo:*

> "Our Federalism" in its ideal form, as the Supreme Court explained in *Younger,* strives towards a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. In recognition of this balance of interests, *Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction. Giving states the first opportunity ... to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] "the competence of the state courts" and acknowledging the dignity of states as co-equal sovereigns in our federal system.

351 F.3d at 75 (internal quotations and citations omitted).

With this doctrinal framework in mind, the Second Circuit has instructed that "*Younger* abstention is *mandatory* when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Id.* (emphasis added).

■ However, the Supreme Court recently held that *Younger* abstention does not extend to "all parallel state and federal proceedings" that meet those three conditions, even "where a party could identify a plausibly important state interest." *Sprint Commc'ns, Inc. v. Jacobs,* —— U.S. ——, ——, 134 S.Ct. 584, 593, 187 L.Ed.2d 505 (2013). Instead, the *Younger* doctrine applies only to three classes of parallel proceedings: (1) "pending state criminal proceeding[s]"; (2) "particular state civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint,* 134 S.Ct. at 588; *see id.* at 591 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold ... that they define *Younger's* scope."); *see generally In re Standard & Poor's Rating Agency Litigation,* 23 F.Supp.3d 378, 409, 2014 WL 2481906, at *22 (S.D.N.Y. June 3, 2014).

■ Applying those standards here, the Court concludes that *Younger* abstention is inappropriate. The first and third of these categories are clearly not applicable here.

■ The second category—namely, "state civil proceedings that are akin to criminal prosecutions"—presents a closer question that requires consideration of the nature of the state court action. Of relevance here, under Section 740 of the Labor

Law, "[a]n employer shall not take any retaliatory personnel action against an employee because such employee ... (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." In order to maintain an action under Section 740, a plaintiff must: "'establish a violation of a law, rule or regulation, which violation must be actual and not merely possible,'" and (2) demonstrate "'that the lack of compliance presents a substantial and specific danger to the public health or safety.'" *Perez v. Consol. Edison Corp. of N.Y.*, No. 02 Civ. 2832(PKC)(FM), 2006 WL 2707316, at *16 (S.D.N.Y. Sept. 20, 2006) (quoting *Connolly v. Harry Macklowe Real Estate Co., Inc.*, 161 A.D.2d 520, 555 N.Y.S.2d 790, 792 (1st Dep't 1990)).

In *Ulysse v. AAR Aircraft Component Servs.*, 841 F.Supp.2d 659 (E.D.N.Y. 2012)(Spatt, J.), this Court elaborated on some of the underlying purposes of that statute:

> [T]he promotion of enforcement of the law is one of the goals of Section 740, as is the general protection of the public welfare. See Executive Memorandum, S. 10074 (N.Y.1984) ("Encouraging employees to bring violations to the attention of their employers and shielding them from employer retaliation if they disclose wrongful conduct to authorities, will protect the welfare of the people of this State, promote enforcement of the law, and give needed protection to employees who wish to act as law-abiding citizens without fear of losing their jobs."); Attorney General's Memorandum, S. 10074 (N.Y.1984) ("By encouraging employees to bring violations to the attention of their employers and by shielding them from dismissal if they disclose wrongful conduct to authorities, this bill will protect the welfare of the people of this state [and] promote enforcement of the law").

*Id.* at 678.

Also, of relevance here, Section 193 of the Labor Law prohibits an employer from making "any deduction from the wages of an employee" unless permitted by law or authorized by the employee for certain payments made for the employee's benefit.

In this case, the Court finds that although a whistleblower statute like Section 740 generally incentivizes enforcement of the law by private parties, a proceeding under that statute, or under Section 193 of the Labor Law, is nonetheless not the type of state proceeding "akin to a criminal prosecution" as contemplated by *Sprint*.

*Sprint* enumerated some of the characteristics found in "quasi-criminal proceedings" that warrant *Younger* abstention.

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

134 S.Ct. at 592 (internal citations omitted).

For example, in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court considered a disciplinary proceeding against a New Jersey attorney. In New Jersey at the time, the state Supreme Court appointed local District Ethics Committees that were responsible for receiving and handling allegations of unethical conduct by attor-

neys. A member of the committee was assigned to recommend whether probable cause existed to issue a complaint against the accused attorney; a decision that was ultimately made by the chair of the Ethics Committee. A formal statement of charges was then issued to the accused attorney, who had 10 days to answer it. Thereafter, the original investigator was assigned to conduct additional investigation and review, resulting in a determination of whether probable cause existed to believe the unethical conduct had taken place. If so, a formal hearing was to be held before a panel of the committee, in connection with which the parties could conduct discovery and submit sworn testimony. The panel thereupon issued findings of fact and conclusions. The full committee, on receipt of this report, then either dismissed the complaint, issued a reprimand, or referred the attorney to a statewide board that could then make recommendations to the state Supreme Court. *Middlesex*, 457 U.S. at 425–30, 102 S.Ct. 2515.

As the Supreme Court explained in *Sprint*, this "state-initiated disciplinary proceeding[ ] against a lawyer for violation of state ethics rules," *Sprint*, 134 S.Ct. at 592, substantiated by a state investigation and the issuance of a formal complaint, was a "'noncriminal proceeding[ ] bear[ing] a close relationship to proceedings criminal in nature,'" such that it merited deference under *Younger*, *id.* (quoting *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515).

Similarly, in *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Supreme Court examined the proceedings of the Ohio Civil Rights Commission ("OCRC"). This body was responsible for allegations of civil rights violations such as, as implicated in *Dayton Christian Schools*,

sex discrimination. An individual could file a complaint alleging civil rights violations with the OCRC. In *Dayton Christian Schools*, an aggrieved employee filed an initial complaint of sex discrimination. After initiation, the OCRC would conduct a preliminary investigation. If it determined that probable cause existed to believe that the allegation was true, it would either seek to resolve the dispute amicably via consent order or file a formal complaint against the accused individual or entity and initiate administrative proceedings against that individual or entity; the individual or entity would then be required to file an answer. *Id.* at 623–24, 106 S.Ct. 2718.

In *Sprint*, the Court pointed to *Dayton Christian Schools* as an example of "state-initiated administrative proceedings to enforce state civil rights laws," involving a state-conducted "preliminary investigation and complaint" that was another example of "an act of civil enforcement of the kind to which *Younger* has been extended." *Sprint*, 134 S.Ct. at 592.

On the other hand, the Supreme Court explained that the Iowa Utilities Board proceeding at issue in *Sprint* itself did not fall into the "civil enforcement action" category for a number of reasons. Unlike the proceedings involved in *Middlesex* and *Dayton Christian Schools*, that proceeding was not initiated by the state, but rather by one private corporation against another; no state authority conducted any investigation, no state actor lodged a formal complaint, and the proceeding as a whole was intended to "to settle a civil dispute between two private parties, not to sanction Sprint for commission of a wrongful act." *Sprint*, 134 S.Ct. at 593. For these reasons, *Younger* abstention was not appropriate in *Sprint*.

Here, for substantially similar reasons as in *Sprint*, *Younger* abstention is not

appropriate. In particular, the state court action here under New York Labor Law § 740 and 193 was not initiated by a state body in its sovereign capacity. Rather, the state court action is between two private parties. Further, the Plaintiff here is also the plaintiff in the state court suit. *Devlin,* 594 F.3d at 895 ("Accordingly, *Younger* does not prevent the federal court from ruling on Devlin's claims in the present suit because Devlin is the plaintiff in both the federal and state proceedings, and Devlin does not seek to enjoin the state proceedings or otherwise use the federal court to shield him from state enforcement efforts."). In this regard, like the state proceeding in *Sprint,* the state court action does not involve "adjudicative authority ... invoked ... to sanction [the federal plaintiff] for commission of a wrongful act." *Id.*

"The jurisdictional sword that sustains federal rights should not be swiftly sheathed simply because a concurrent parallel attack has been mounted in the state courts." *United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 595 (2d Cir.1989). Thus, the Court finds that *Younger* abstention is not applicable to the instant case.

### III. CONCLUSION

In sum, the State Court proceeding does not fit into any of the three categories outlined by the *Sprint* decision that would warrant *Younger* abstention. Accordingly, the Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

**SO ORDERED.**